**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                          :
                                                      :
          Plaintiff,          :   Civil Action No. 22-cv-3050
                                                      :
v.                                                    :   **COMPLAINT FOR VIOLATIONS OF**
                                                      :   **SECTIONS 14(a) AND 20(a) OF THE**
SUMMER INFANT, INC., ROBIN MARINO,                    :   **SECURITIES EXCHANGE ACT OF**
ALAN MUSTACCHI, STEPHEN                               :   **1934**
ZELKOWICZ, EVELYN D'AN, ANDREW                        :
TRAIN, and STUART NOYES,                              :   **JURY TRIAL DEMANDED**
                                                      :
          Defendants.        :
--------------------------------------------------------   :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Summer Infant, Inc. ("Summer Infant or the "Company") and the members Summer Infant's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Summer Infant by affiliates of Clayton, Dubilier & Rice, LLC ("Kids2")

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 8, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Project Abacus Acquisition Corp. ("Merger Sub"), a wholly-owned subsidiary of Kids2, will merge with and into Summer Infant with Summer Infant surviving as a wholly-owned subsidiary of Kids2 (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 16, 2022 (the "Merger Agreement"), each Summer Infant stockholder will receive $12.00 in cash (the "Merger Consideration") for each Summer Infant share owned.

1.      As discussed below, Defendants have asked Summer Infant's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Kroll, LLC, operating through its Duff & Phelps Opinions Practice ("Duff & Phelps") in support of its fairness opinion.

2.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Summer Infant's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of Summer Infant stocks and has held such stocks since prior to the wrongs complained of herein.

8.      Individual Defendant Robin Marino has served as a member of the Board since August 2015 and is the Chairwoman of the Company.

9.      Individual Defendant Alan Mustacchi has served as a member of the Board since May 2015.

10.      Individual Defendant Stephen Zelkowicz has served as a member of the Board since August 2014.

11.      Individual Defendant Evelyn D'An has served as a member of the Board since November 2016.

12.      Individual Defendant Andrew Train has served as a member of the Board since August 2017.

13.     Individual Defendant Stuart Noyes has served as a member of the Board since December 2020 and is the Company's Chief Executive Officer.

14.     Defendant Summer Infant is a Delaware corporation and maintains its principal offices at 1275 Park East Drive, Woonsocket, Rhode Island 02895.  The Company's stock trades on the NASDAQ Capital Market under the symbol "SUMR."

15.     The defendants identified in paragraphs 10-13 are collectively referred to as the "Individual Defendants" or the "Board."

16.     The defendants identified in paragraphs 10-14 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

17.     Summer Infant, an infant and juvenile products company, designs, markets, and distributes branded juvenile safety and convenience products. It offers a range of juvenile products in various product categories, including gates, potty, bath, entertainers, specialty blankets, strollers, car seats, and travel systems, as well as audio and video monitors primarily under the Summer and SwaddleMe brand names. The Company sells its products directly to retailers through own direct sales force; and through partner's websites and its own direct to consumer website, as well as through international distributors, representatives, and retail customers. It operates in the United States, Canada, Europe, South America, Mexico, Asia, and the Middle East. Summer Infant was founded in 1985 and is headquartered in Woonsocket, Rhode Island.

18.     On March 16, 2022, the Company announced the Proposed Transaction:

WOONSOCKET, R.I., March 16, 2022 (GLOBE NEWSWIRE) -- Summer Infant, Inc., doing business as SUMR Brands ("SUMR Brands" or the "Company") (NASDAQ: SUMR), a leader in premium infant and juvenile products, today announced that it and Kids2, Inc. ("Kids2"), a global company that designs solutions to

help early-stage parents and families, have entered into a definitive merger agreement pursuant to which Kids2 will acquire all of the issued and outstanding common stock of the Company for cash. Under the terms of the agreement, the Company's stockholders will receive $12.00 in cash for each share of Company common stock that they own, implying a 41.2% premium to the closing price of the Company's common stock on March 15, 2022. The transaction has been unanimously approved by the Company's Board of Directors, and Wynnefield Capital and Jason Macari, significant stockholders of the Company, have signed voting agreements in support of the transaction. The transaction is expected to close in the second quarter of 2022.

Stuart Noyes, the Company's CEO, said, "We are pleased with the value creation this transaction brings to SUMR's shareholders and believe it is beneficial to all stakeholders, as it ensures our leading brands are available and supported by a larger, broad-based global organization. We look forward to continuing to serve our customers through exceptional products and industry-leading innovation."

"This acquisition is a critical move in our long-term vision and growth strategy -- and we are excited about the many synergies between Kids2 and Summer Infant," added Ryan Gunnigle, CEO of Kids2. "We continue to see consolidation in our industry and macro consumer trends with the next generation of parents that require us to do more. The economics of scale and diversity of solutions that come with this acquisition will help us continue to create more tiny wins and added value for our partners and the parents we serve across the globe. With this acquisition, Kids2 will leverage its already existing brand platform strength and add new adjacent categories from Summer Infant's portfolio to further scale globally. Additionally, our global supply chain will be complemented by Summer Infant's capabilities which will allow us to drive wider global distribution. The combined innovation of both, along with more collaboration of industry expertise, will lend itself to more ideation and delivery of more solutions for families across the globe."

The transaction is subject to customary closing conditions, including Company stockholder approval, as well as the closing of debt financing by Kids2 to fund the acquisition. Upon completion of the transaction, the Company will become a privately-held company and its common stock will no longer be listed on the Nasdaq Capital Market.

The Company is holding its fourth quarter and full year investor conference call at 9:00 a.m. Eastern Time on March 17, 2022 and will also address the Kids2 transaction. To listen to the call, visit the Investor Relations section of the Company's website at www.sumrbrands.com or dial 844-834-0642.

Consensus Advisors is acting as financial advisor to SUMR and Greenberg Traurig, LLP is serving as its legal counsel. The Duff & Phelps' Opinions Practice of Kroll, LLC provided an independent fairness opinion to the Board of Directors of SUMR. Lincoln International, LLC is acting as financial advisor to Kids2 and Foley & Lardner LLP is serving as its legal counsel.

\* \* \*

19.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Summer Infant's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

20.     On April 8, 2022, Summer Infant filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

21.    The Proxy Statement fails to provide material information concerning financial projections by Summer Infant management and relied upon by Duff & Phelps in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Duff & Phelps with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Summer Infant management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

22.    For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA and Adjusted EBITDA, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

23.    When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with

GAAP. 17 C.F.R. § 244.100.

24.     The SEC has noted that:

> companies should be aware that this measure does not have a
> uniform definition and its title does not describe how it is calculated.
> Accordingly, a clear description of how this measure is calculated,
> as well as the necessary reconciliation, should accompany the
> measure where it is used. Companies should also avoid
> inappropriate or potentially misleading inferences about its
> usefulness. For example, "free cash flow" should not be used in a
> manner that inappropriately implies that the measure represents the
> residual cash flow available for discretionary expenditures, since
> many companies have mandatory debt service requirements or other
> non-discretionary expenditures that are not deducted from the
> measure.[1]

25.     Thus, to cure the Proxy Statement and the materially misleading nature of the

forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable

GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

_Omissions and/or Material Misrepresentations Concerning Financial Analyses_

26.     With respect to Duff & Phelps's _Income Approach (Discounted Cash Flow_

_Analysis)_, the Proxy Statement fails to disclose: (i) the unlevered free cash flow of the Company

for the fiscal years ending on or around December 31, 2022 through December 31, 2025; (ii) the

terminal value for Summer Infant; (iii) the inputs and assumptions underlying the use of a 3%

terminal growth rate; (iv) the perpetuity growth formula used and the inputs and assumptions

underlying; (v) the inputs and assumptions underlying the use of the range of discount rates of

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

13.00% to 15.00%; (vi) the Company's weighted average cost of capital; and (vii) the Company's after-tax cost of debt.

27.     With respect to Duff & Phelps's *Market Approach (Selected Public Companies Analysis)*, the Proxy Statement fails to disclose the financial metrics for the companies selected by Duff & Phelps in the analysis.

28.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

29.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

30.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

31.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

32.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

33.    Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

34.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. The Individual Defendants acted as controlling persons of Summer Infant within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Summer Infant, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Summer Infant, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

37. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

38. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Summer Infant, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

39.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

40.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

41.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

42.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 13, 2022                              **MELWANI & CHAN LLP**

                                        By:   */s/ Gloria Kui Melwani*
                                              Gloria Kui Melwani
                                              1180 Avenue of the Americas, 8th Fl.
                                              New York, NY 10036
                                              Telephone: (212) 382-4620
                                              Email: gloria@melwanichan.com

                                              *Attorneys for Plaintiff*